**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

METRO TOWERS, LLC,

      Plaintiff,

v.                                                   CIVIL ACTION NO. 1:20cv206
                                             (KLEEH)

MICHAEL C. DUFF and
BARBARA C. LUDLOW,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

Pending before the Court is *Defendants Michael C. Duff and Barbara L. Ludlow's Motion to Exclude Plaintiff's Experts*. ECF No. 94. Plaintiff responded in opposition. ECF No. 98. For the reasons that follow, the Court **GRANTS** Defendants' motion [ECF No. 94] and excludes the proposed expert testimony of Plaintiff Metro Towers, LLC's disclosed expert witnesses.[1]

**I.   BACKGROUND**

Plaintiff Metro Towers, LLC, is the owner of real property located at 40 Metro Towers, Morgantown, West Virginia, Parcel 278 of TM 15 in North Morgantown, West Virginia. Defendants Michael

---

[1] Plaintiff indicated the expert it intends to call at trial is Scott A. Copen. Plaintiff also designated Nicolas Webb as an expert witness, but disclosed that he will not be testifying at trial. ECF No. 103, Mot. Exclude Pl.'s Expert Tr., 6:18-7:6. The findings made herein apply to Plaintiff's proposed expert testimony of both Scott Copen and Nicolas Webb.

**Metro Towers v. Duff**                                   **1:20cv206**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

Duff and Barbara Ludlow are the owners of real property located at Parcel 93.1, BL 49, Lots 14 and 15 and Parcel 94, BL 49 Lots 16 and 17, in North Morgantown, Monongalia County, West Virginia. ECF No. 1-1, Compl. ¶¶ 2-4. Plaintiff and Defendants are adjoining landowners. Id. As of May 27, 2019, Defendants are citizens of Hawaii, residing in Maui County, Hawaii [Exhibit B, Aff. M. Duff, B. Ludlow ¶ 2]. Because Plaintiff is a citizen of West Virginia and Defendants are citizens of Hawaii, complete diversity of citizenship exists under 28 U.S.C. § 1332.

In the January 17, 2020, Complaint, Plaintiff alleges on February 9, 2019, it became aware that water, debris, mud, unstable soils, and other material slipped, slid, and moved from Defendants' property onto Plaintiff's property. ECF No. 1-1, Compl. ¶ 7. Plaintiff temporarily stabilized the hillside by regrading a bench that it had constructed in 2015. Id. at ¶ 8; Prelim. Inj. Tr., ECF No. 61, at 22:24-24:6. "The bench . . . is on the property that is owned by the city in-between them or on the Metro property." Prelim. Inj. Tr., ECF No. 61, at 24:5-6. Two years after filing suit and three years after the February 9, 2019, slip, Plaintiff filed an Emergency Motion for Preliminary Injunction, ECF No. 48, claiming that at some time prior to January 25, 2022, the hillside and slope failed again and that the City of Morgantown will condemn

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

its property should the hillside slip again.  ECF No. 48 at ¶¶ 9 and 11.

Plaintiff alleges two causes of action: (1) Negligence and (2) Trespass. Plaintiff argues that Defendants breached a duty owed, as adjoining landowners to Plaintiff, to protect Plaintiff from the encroachment, slippage, or movement of water, mud, debris, and unstable soils from Defendants' real property. ECF No. 1-1, Compl., ¶¶ 9-10. Such negligence was the proximate cause of the damages allegedly incurred by Plaintiff. Id. at ¶ 11. Plaintiff further asserts the encroachment of the materials from Defendants' property constitutes a trespass onto Plaintiff's property. Id. at ¶¶ 12-14. Plaintiff seeks compensatory damages and injunctive relief. Id. at ¶¶ 16-19.

At the preliminary injunction hearing, the parties agreed that a geotechnical analysis is required to determine a cause of the slip and the extent of repairs that are necessary to remediate the hillside.  Prelim. Inj. Tr., ECF No. 61, at 12:16-13:4. The testimony revealed that Plaintiff had not conducted a geotechnical analysis on the hillside. Id. Nor had Plaintiff done an analysis of the subsurface.  Id. at 23:14-24.  Nicolas Webb ("Webb"), one of Plaintiff's experts, noted the subsurface is an important component in assessing the state of the slope.  Id.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

Conversely, at the <u>Daubert</u> hearing on April 5, 2022, Plaintiff's expert Scott A. Copen ("Mr. Copen"), testified that while Plaintiff did conduct a geotechnical analysis – which is in direct contravention of Plaintiff's expert's prior testimony – Mr. Copen did not conduct geophysical studies or measurements of soil conductivity and resistivity to determine causation, and admitted "[t]he cause of [the slip] [was] blatantly obvious." ECF No. 103, Mot. Exclude Pl.'s Expert Tr., 56:8-17.

With that, the Court questioned whether Mr. Copen's expert testimony is (1) relevant and (2) based on reliable principles and methods. Fed. R. Evid. 702. On April 5, 2022, the Court convened for a <u>Daubert</u> hearing to make this determination.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of testimony by expert witnesses.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

Fed. R. Evid. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

"[A] district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." United States v. Smith, 919 F.3d 825, 835 (4th Cir. 2019). "Relevant evidence, of course, is evidence that helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993)). "[R]elevance . . . is a precondition for the admissibility of expert testimony, in that the rules of evidence require expert opinions to assist the 'trier of fact to determine a fact in issue.'" United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 318 (4th Cir. 2018) (quoting Daubert at 591).

The thrust of Rule 702 is to protect the jury from "evidence that is unreliable for reasons they may have difficulty understanding." City of Huntington v. AmerisourceBergen Drug Corp., No. 3:17-01362, No. 3:17-01665, 2021 WL 1596355, *2 (S.D.W. Va. Apr. 22, 2021) (quoting Quality Plus Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., No. 3:18-cv-454, 2020 WL 239598, at *13 (E.D. Va. Jan. 15, 2020). To assess reliability,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

the court conducts a flexible inquiry evaluating the expert's methodology rather than the expert's conclusion. TFWS v. Schaefer, 325 F.3d 234, 240 (4th Cir. 2003). "A reliable expert opinion must be based on scientific technical or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999). Daubert recited the non-exclusive factors:

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (quoting Daubert, 509 U.S. at 593-94).

Expert opinions that are "bare conclusion[s] without reliable support" must be excluded. See, e.g., Stolting v. Jolly Roger Amusement Park, Inc., 37 F. App'x 80, 83 (4th Cir. 2002); McEwen v. Baltimore Washington Med. Ctr. Inc., 404 F. App'x 789, 791-92 (4th Cir. 2010). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

expert." McEwen, 404 F. App'x at 791-92; (quoting Gen. Elec. Co.
v. Joiner, 522 U.S. 136, 146, (1997). The proponent of the expert
testimony bears the burden of establishing its admissibility by a
preponderance of the evidence. Cooper v. Smith & Nephew, Inc., 259
F.3d 194, 199 (4th Cir. 2001); Daubert, 509 U.S. at 592 n. 10.

### III. DISCUSSION

Scott A. Copen is a retained expert by Plaintiff to establish
the cause of the property slip from the Duff property onto
Plaintiff's property, causing damage. Mr. Copen is the Vice
President of Cheat Road Engineering, Inc., an engineer who
Plaintiff submits is qualified to testify to the cause of the slope
failure. ECF No. 15-2. Defendants do not dispute Mr. Copen is a
qualified expert in the engineering field. ECF No. 103, Mot.
Exclude Pl.'s Expert Tr., 3:7-13 ("And certainly we do not
challenge that Mr. Webb and Mr. Copen do have the credentials,
education, and experience to provide testimony.").

Plaintiff relies on two expert reports submitted to the Court,
one on October 27, 2020, [ECF No. 484-2, Exhibit B] and a second
on January 27, 2022 [ECF No. 48-1, Exhibit A]. Both reports are
letters drafted by Nicolas Webb of Cheat Road Engineering, and are
relied upon by Mr. Copen in his intended testimony. A third report
was submitted on February 9, 2022 [ECF No. 59-1].   Plaintiff

Metro Towers v. Duff                                          1:20cv206

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

maintains the January 27, 2022, and February 9, 2022, letters "relate[s] to [its] concerns for the injunction," and not to the expert's "overall opinion evidence that would be submitted at trial." ECF No. 103, Mot. Exclude Pl.'s Expert Tr., 7:10-8:5.

### A. October 27, 2020, Expert Report[2]

Plaintiff's October 27, 2020, report is a two-page letter drafted by Nicolas P. Webb, P.E. ("Webb"), Senior Project Manager at Cheat Road Engineering, Inc. The letter's subject line reads "Metro Towers Slope Failure" and contains a summary of preliminary findings regarding the slope failures adjacent to the Metro Towers property. The report was based on multiple site visits in February 2019 to provide guidance for temporary mitigation of the slope failure. "The failure of the slope and associated movement of mud/liquefied material from the slope was affecting the adjacent Metro Towers building." Damage ensued and immediate action was necessary. The report included four (4) photographs of the hillside, depicting portions of the failing slope, deleterious material, and mud. The report indicates the efforts of an excavating contractor who worked to establish a bench above the Metro property to provide a temporary buffer between Metro and the hillside. Material was removed as well.

---

[2] ECF No. 98-5, Exhibit E.

Metro Towers v. Duff                                        1:20cv206

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

Webb states:

> CRE has not performed a geotechnical analysis
> of the failing slope and cannot make detailed
> recommendations regarding the permanent
> mitigation of the slope. However, based on
> observations while onsite during temporary
> mitigation efforts, it appears that the
> failing slope largely consists of construction
> debris and other deleterious materials mixed
> with saturated soil that presents few options
> for permanent mitigation.

In estimating a total cost of $450,000.00 in repairs, Webb reiterates: This estimate is not based on a detailed geotechnical report and associated laboratory testing would be required for proper design of a drilled soldier pile and concrete lagging wall."

**B. January 27, 2022, Expert Report[3]**

Plaintiff's January 27, 2022, report is a two-page letter likewise drafted by Nicolas P. Webb, P.E., Senior Project Manager at Cheat Road Engineering, Inc. The letter's subject line reads "Metro Towers Slope Failure" and contains a summary of findings made after a January 26, 2022, site visit to the Metro property. Plaintiff indicated this letter was drafted for the purposes of providing support for the petition for preliminary injunction. ECF No. 103, Mot. Exclude Pl.'s Expert Tr., 7:10-8:5.

---

[3] ECF No. 48-1, Exhibit A.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

The letter describes the continual movement of the failing slope has "rendered the previously installed drainage measures on the bench ineffective, which is likely the ultimate reason the previously stable slope below the bench is showing signs of distress." Again, CRE recommended temporary mitigation with a "permanent plan of mitigation implemented soon thereafter. As stated in previous correspondence, CRE believes the failing slope material largely consists of construction debris and other deleterious material mixed with saturated soil that presents few options for permanent mitigation."

Webb indicates the failing slope will likely accelerate and "react to the expected freeze/thaw conditions that will be present following the current freezing temperatures," and recommends immediate action to mitigate the damage. This letter was drafted after an in-person and on-site observation, and likewise included photographs.

### C. February 9, 2022, Supplemental Expert Report[4]

Plaintiff's February 9, 2022, supplemental report is a one-page letter drafted by Nicolas P. Webb, P.E. The letter's subject line reads "Metro Towers Slope Failure Supplemental Opinion" and contains a summary of findings made after the February 7, 2022,

---

[4] ECF No. 59-1.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

hearing on petition for preliminary injunction. Plaintiff indicated this letter was drafted for the purposes of providing support after the petition for preliminary injunction. ECF No. 103, Mot. Exclude Pl.'s Expert Tr., 7:10-8:5. The letter contains recommendations from Webb regarding the development and implementation of a monitoring plan, including the installation of observation points and visual observation by a professional engineer.

### D. Reliability

To assess reliability, courts conduct a flexible inquiry evaluating an expert's methodology rather than the expert's conclusion. TFWS v. Schaefer, 325 F.3d 234, 240 (4th Cir. 2003). "A reliable expert opinion must be based on scientific technical or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999).

Daubert's non-exclusive factors are well-known:

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

> technique has achieved "general acceptance" in
> the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (quoting

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-

94 (1993)).

Defendants move to exclude Mr. Copen's testimony as unreliable because Plaintiff failed to perform any necessary testing – surveying, aerial photography, map analysis, drilling – to determine the proximate cause of the property slip. ECF No. 94. Defendants maintain their reliability challenge against Plaintiff's causation expert is two-fold: (1) the expert's inconsistent testimony at the February 7, 2022, preliminary injunction hearing and (2) the lack of scientific or technical methodology. ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 6:3-17. Defendants take issue with Plaintiff's failure to conduct a geotechnical analysis. Plaintiff opposes Defendants' motion, stating the analysis performed by its expert – consisting of an eye-view of the slippage, map review, and physical touch to the soil – is a geotechnical analysis and consisted of reliable testing methods within the expert field of engineering. ECF No. 109.

The questions before the Court turn on whether Mr. Copen's opinions are (1) "based on scientific technical or other specialized knowledge and not on belief or speculation" and (2)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

relevant. <u>Oglesby v. General Motors Corp</u>., 190 F.3d 244, 250 (4th Cir. 1999). The Court addresses the first question by utilizing the five (5) non-exclusive <u>Daubert</u> factors.

Plaintiff intends to introduce Mr. Copen's expert testimony on the issue of causation, only. ECF No. 103, Mot. Exclude Pl.'s Expert Tr., 9:7-11:17, 12:11-13, 13:21-25. Plaintiff has presented juxtaposed expert opinion throughout this case, creating a question of reliability with the Court. It is undisputed that during the February 7, 2022, preliminary injunction hearing, Mr. Webb testified that a geotechnical analysis would be necessary to determine two issues pertinent to Plaintiff's claims: (1) causation and (2) remediation. Mr. Webb penned in his October 27, 2020, report that no geotechnical analysis had been performed. ECF No. 484-2, Exhibit B. Also unchallenged was Plaintiff's failure to conduct the geotechnical analysis. At the <u>Daubert</u> hearing, two short months later, Mr. Copen testified he did, in fact, conduct a geotechnical analysis of the slope failure. What's more, Plaintiff maintains a geotechnical analysis was never needed to determine causation because the cause of the slope failure and resulting damage was so obvious. ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 56:8-17; 73:12-74:3.

Metro Towers v. Duff                                    1:20cv206

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

Mr. Copen has not reliably established that artificial conditions on Defendants' property caused the slip failure and resulting damage to the Metro property. Liability for a landslide is attributable to a defendant if the landslide was caused by "artificial conditions upon [the] property"; the condition was known, or reasonably should have been known by the defendant; the defendant "failed to correct the conditions within a reasonable time after it should have learned of them"; and the plaintiff "did not expressly or implicitly consent to the continued existence of the conditions." Miller v. Montgomery Investments, Inc., 387 S.E.2d 296, 300 (W. Va. 1989).

Mr. Copen opined that all materials that moved onto Plaintiff's property, allegedly causing damage, came from Defendants' property. ECF No. 46-1, Copen Dep., 45:6-13. Mr. Copen further asserts that the garbage found on the slope "should be identified as a potential cause of the [slope's] failure. . . [because] [t]he materials that are present in that soil, the garbage and junk, changes the nature of the soil. And . . . [that material] makes [the soil] behave differently." Id. at 47:13-48:5. Mr. Copen believes the garbage "is the likely cause of the issue." Id. at 48:6-11. It is Plaintiff's position that so long as there is deleterious material in the hillside, "Defendants were

**Metro Towers v. Duff**                                    **1:20cv206**

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
### MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

responsible for it so long as they knew or should have known about it," even when Mr. Copen has testified that the cause of the landslide is "water building up and causing the liquefaction of uncompacted soil that contained the deleterious material that was placed on that hillside." ECF No. 109 at 8; ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 41:12-14. The Court notes that water is a natural element, something that is meaningful to Plaintiff's case and Defendants' defense. Nonetheless, Mr. Copen maintained the deleterious material caused the water to build up in the soil, without having tested the organic content or volume of the soils or opining the pathway the water took in the soil, all while maintaining the proximate cause of the slope failure is "blatantly obvious." ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 56:16-17.

Problems continued to reveal themselves through Mr. Copen's cross examination at the <u>Daubert</u> hearing regarding testing methods and performance:

> Q.  Okay. When Mr. Webb was here, he admitted that no geotechnical analysis was performed.
> Do you agree with that?
>
> A.  No geotechnical analysis in the traditional sense of laboratory testing and slip stability modeling.
>
> Q.  Would you admit there was no testing of any kind done on this hill?
>
> A.  Correct. We have not performed any soil sampling or laboratory testing of the soils.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

Q.   Okay. Would you agree that you have no information about the length of time that the materials that you found after the hill slide were in the hill?

A.   Do you mean how long they were there prior to the slide?

Q. That is correct.

A. That's correct.

Q.   Okay. You would agree with me that you have done no surveying of the hill or the property in question?

A. Correct.

Q.   You would agree with me that you don't have any calculations of the steepness of the hill?

A.   The slope, we utilized -- I mean, it's provided in the CEC documents and we agree with what the mapping showed.

Q. And the CEC documents are the defendant's expert reports?

A. That's correct.

Q.   But you, yourself, did no measurements or calculations of the slope of the hill?

A. That's correct.

Q. You did no saturation analysis of the soils?

A. No, sir.

Q.   You never reviewed any property engineering or construction documents for either the Duff's property or the Metro Towers' property?

A. That's correct.

Metro Towers v. Duff                                          1:20cv206

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

Q.  You agree that a retaining wall was constructed by Metro Towers on its property at the base of the hill?

A.  There was a retaining wall constructed on the Metro property down slope from the area that slid.

Q.  You did not review any engineering documents, drawings, regarding that wall?

A. Correct.

ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 29:6-30:20. As to causation, Mr. Copen testified excessive precipitation, as recorded within the last two decades, is "one of the things that caused the material to move when it did." ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 32:20-33:6. When asked about any compaction testing, he replied: "It's impossible to test mud." Id. 36:20-22.

Along the same thread, Mr. Copen continued:

> So when we get into the causation of this particular landslide, . . . we don't have to have laboratory analysis done to see uncompacted soils. We are trained to see that. You can tell by the grain structure. You can tell by the way the soil is layered. You can tell it by a lot of things that we know how to do that a lay person would not. They would not pick up on these things and understand that they are looking at uncompacted soil like we can. And when you throw in . . . the tires, the plastics, everything else that was in that hillside down there, it is an inherently unstable condition. When it liquified, which it did, and what exactly caused that liquefaction to happen could have been some of the plastic had acted as a barrier and caused water to build up inside the slope until it

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

> reached the point of total saturation. You
> know, it started to move. Once it started to
> move and the face of it started to roll off,
> it just continued to go and continued to go.
> And that's the thing, I can't -- nobody, I
> would say, nobody could model what exactly
> caused the initial movement on a computer
> program with laboratory testing, because they
> couldn't get the sample to do the laboratory
> testing of because it had literally rolled
> over the hill and was in a pile on the sidewalk
> below.

Id. 40:11-41:7. Mr. Copen testified the cause of the landslide

"was water building up and causing the liquefaction of uncompacted

soil that contained the deleterious material that was placed on

that hillside." Id. 41:12-14. Mr. Copen also testified that organic

fill should contain less than 5% of organic material; however,

neither Mr. Copen, nor any other expert disclosed by Plaintiff,

analyzed the percentages of organic fill in the soil at issue. Id.

42:20-43:3. Mr. Copen still opined the organic material amounted

to beyond 5%, based on what the fill looked like. Id. 43:4-11. Mr.

Copen also opined the volume of soil at issue measured "less than

1,000 yards"; however, he never performed a volume analysis of the

organic composition. Id. 43:15-44:11.

Mr. Copen testified that he conducted a map analysis (reviewed

CEC mapping), aerial reconnaissance (reviewed Monongalia County

aerial mapping), and field reconnaissance (physical touch to the

soil). Id. 51:4-54:15. Mr. Copen testified no drilling occurred,

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

and any drilling would not be done to determine causation; instead, drilling is used to determine a permanent solution. Id. 54:16-22. He testified the remaining geotechnical analysis steps listed in Defendant's Exhibit 1 [ECF No. 102-1] would not be used as part of the geotechnical evaluation to determine causation here, mainly because the cause was "blatantly obvious." Id. 56:1-20.

Yet, while "blatantly obvious" to Mr. Copen, he continued to hedge on the cause of the slip, to a reasonable degree of scientific certainty. While Mr. Copen testified the cause of the slope failure was the "improperly placed fill material and the deleterious material contained inside that improperly placed fill," he also testified that properly placed fill can fail on a slope, too. Id. 60:5-10, 65:3-15. Mr. Copen confirmed that the construction of the retaining wall at the base of the hill would also change the natural course of water drainage, and therefore affect the stability of the hillside, but he did not review those construction drawings or the analyze the retaining wall itself. Id. 65:20-67:9.

The Court is left to digest a full spectrum-range of information regurgitated from Plaintiff's experts, from the failure to perform any geotechnical analysis (ECF No. 98-5, Exhibit E; ECF No. 98-3, Copen Dep. 35:1-20; ECF No. 61, Prelim. Inj. Tr.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

12:16-13:4) to having performed one. Such change in position was not dated in any new report or on-site observation, however, and was instead confirmed as simply a change in testimony regarding the "misnomer" or "semantics" surrounding the term "geotechnical analysis." ECF No. 61, Prelim. Inj. Tr. 12:16-13:4; ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 16:7-19:4. Mr. Copen listed the factors of the geotechnical analysis he performed and testified under oath that this was, in his opinion, the geotechnical analysis needed to determine causation of this slope failure. ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 51:4-56:1. Under the same breath, Plaintiff argues the geotechnical evaluation – one with drilling and laboratory tests – is not necessary to determine causation. Id. 16:7-22.

The Court cannot quantify the testing factors here when the expert opinions and analyses continue to contrast, and when it is abundantly clear that Plaintiff's experts performed a version of, or parts of, the geotechnical analysis while ignoring other testing methods that would measure the soil volume, pathways of water in the hillside, the behavior of soil around the retaining wall, and the amount of inorganic fill in the hillside. The Court takes most issue with the inconsistent reports and testimony (see ECF No. 98-5, Exhibit E; ECF No. 98-3, Copen Dep. 35:1-20, 45:23-46:7; ECF

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
### MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

No. 61, Prelim. Inj. Tr. 12:16-13:4) than it does with the expert's testimony with regard to actual testing methods performed, albeit such testimony is a short blip in the universe of confusing information (see ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 51:4-54:15). Again, Mr. Copen testified he performed steps within the guidelines of the geotechnical analysis and the Court has no quarrel with that narrow testing method he performed. ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 51:4-54:15.

But it is the Court's role to gatekeep proposed expert testimony. Expert testimony should be admitted only if it is reliable and helps the jury understand the issues or evidence. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993). The Court has little confidence Mr. Copen's testimony on causation is reliable or that it would assist the trier of fact in determining a fact in issue. Plaintiff has failed to show, at minimum, three of the five Daubert factors. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593-94 (1993). There is no evidence supporting the existence and maintenance of standards controlling the scientific operation or the general acceptance of Mr. Copen's testing in the engineering community. Id. The Court is hesitant that Mr. Copen's scientific testing on the issue of

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

causation has been subjected to peer review and publication, or even whether his method has a potential rate of error. Id. Mr. Copen's testing is, at best, incomplete.

At the heart of Mr. Copen's opinion is the assumption made as to causation upon viewing a certain result:

> I think what Mr. Copen is going to say is, look, when we were digging out the soils, the way the soils behaved, upon knowledge, education, experience, they lacked all shear strength. The soils no longer could keep a condition that was capable of being compacted, capable of remaining in its form. It had been liquified. . . So the geotechnical analysis that was appropriate at the time was simply observation and documentation of how the soil behaved when it was moved by the excavator button, when you grab it in your hands and it falls through like a sieve.

ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 18:12-25. It is impossible for the Court to determine this method's rate of error, the standards controlling this technique, or the general acceptance of this test in the engineering community. The test performed was, indeed, simple observation.

**E. Relevance**

Evidence is relevant if it "helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017) (quoting Daubert, 509 U.S. at 591). An essential element of Plaintiff's

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

cause of action is that the Defendants' negligence caused damage to the Metro property. An expert's opinion as to proximate cause must be stated in terms of reasonable probability. Id.; Hovermale v. Berkeley Springs Moose Lodge No. 1483, 271 S.E.2d 335, 340 (W. Va. 1980).

Even if the Court would find Mr. Copen's expert testimony reliable, it is not relevant. Mr. Copen's opinions would be unhelpful to the trier of fact because he based his expert opinion on unreliable testing measures, while contradicting his findings with earlier, undisputed testimony. The problem Plaintiff creates for itself with Mr. Copen's testimony is that it continues to simplify its case against Defendants. Plaintiff proffers the issue of causation with the hillside slip is "a pile of garbage stuck in a hillside." ECF No. 109 at 2. Plaintiff even goes so far to say that causation does not matter, while simultaneously offering Mr. Copen's expert testimony to the sole issue of causation. ECF No. 109 at 7 ("In other words, it *does not matter* if an "abnormal" amount of water, the various tires, bricks and other garbage on the hillside, or the Plaintiffs' construction of a wall was ultimately responsible." Emphasis in original). Again, so long as there is deleterious material in the hillside, "Defendants were responsible for it so long as they knew or should have known about

Metro Towers v. Duff                                        1:20cv206

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
### MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]

it," even when Plaintiff's expert has testified that the cause of the landslide likely involves water build up. Id. at 8; ECF 103, Mot. Exclude Pl.'s Expert Tr. 41:12-14. Nonetheless, Mr. Copen maintained the deleterious material caused the water to build up in the soil, without having tested the organic content or volume of the soils, or opining the pathway the water took in the soil, all while maintaining the proximate cause of the slope failure is "blatantly obvious." ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 56:16-17.

Mr. Copen's testimony would not assist the trier of fact to understand the evidence or to determine a fact in issue. Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017). Again, the Court's takeaway is that Mr. Copen conducted a geotechnical analysis, one that may not satisfy Defendants' definition, and that a geotechnical analysis was not required to begin with because the cause of the soil slip was obvious. See ECF No. 103, Mot. Exclude Pl.'s Expert Tr. 73:12-21. "To be reliable under Daubert, the proposed expert testimony must have 'a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" Nease, 848 F.3d at 239 (citing Daubert, 509 U.S. at 592). Here, Mr. Copen's scientific connection to the issue of causation is lacking. His opinions are too speculative to be

Metro Towers v. Duff                                          1:20cv206

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO EXCLUDE PLAINTIFF'S EXPERTS [ECF NO. 94]**

helpful to the trier of fact in determining whether the Defendants'
artificial conditions in the hillside caused the alleged damage to
the Metro property and must be excluded.

**IV.   CONCLUSION**

For the reasons discussed, because the Court finds that the
proposed expert testimony is unreliable and irrelevant, it **GRANTS**
Defendants' motion to exclude the expert opinions [ECF No. 94].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum
Opinion and Order to counsel of record.

**DATED:** May 26, 2022

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA